† Augusta Mutual Fire Ins. Co. *versus* French.

A mutual insurance company, to maintain an action for an *assessment*, upon a premium note, must show that it was *legally* made.

Thus, where such company being regularly organized, were authorized by a Legislative Act, as to all applications to them *afterwards* made, to take them

under their *former* organization, *until* the property to be insured in each class should amount to fifty thousand dollars, *when* the risks thus taken might be classified; and the company after such Act received an application and issued a policy in one of the classifications and made an assessment upon the premium note; *it was held,* that without showing that the risks in *each* class equalled the sum required by the Act, the assessment was unauthorized and no action for it could be maintained.

On Report from *Nisi Prius,* Rice, J., presiding.

Assumpsit.

The writ contained two counts. One was upon a note given by defendant for $225, dated Dec. 12, 1849, purporting to be for value received in policy No. 3180, and to be paid at such times, and by such instalments as the plaintiffs should from time to time determine, pursuant to the Act of incorporation and by-laws of the company.

The other count was for an assessment made Jan. 1, 1853.

Plaintiffs were incorporated in Feb. 1845, and soon after organized. In July, 1849, the Legislature, by an additional Act, authorized the plaintiffs to make a *classification* of risks and the second section provided: —

"That all applications to said company for insurance hereafter made, may be taken by said company under their present Act of incorporation until the property to be insured in each class shall amount to $50,000, when the risks thus taken may be classed and policies issued. The applications made under this section shall contain a provision for transferring the risk from the general company to a classified risk when the property to be insured in the several classes shall amount to the sum aforesaid."

The records of the corporation did not show any vote accepting the Act of 1849, or any vote of the directors, ordering a classification of the risks.

From the register it appeard that defendant's risk was taken Dec. 12, 1849, — that the policy was No. 3180, and was in the third class.

The secretary testified, and the register exhibited showed, that plaintiffs commenced taking risks in the classes Sept.

1st, 1849; that they classified the old risks and the new risks taken in the classes after Sept. 1st, 1849, on the first day of Jan. 1850, into three classes; and on that day ordered an assessment on all the risks of the company to that time, which assessments included the risks taken in the various classes to that date. The amount of risks taken and registered in the various classes to Jan. 1, 1850, and in force at that time, was, class 1st, $42,000; class 2d, $100,000; class 3d, $83,945. The risks in all the classes on Jan. 1st, 1850, were over $1,000,000, and the old and new risks classified on that day, were over $60,000.

It appeared that defendant's assessment of Jan. 1st, 1850, was $4,50, and had been paid. The *first* assessment on the *third class* was made by order of the directors, Jan. 1, 1851, of which defendant's assessment was $19,12, which he had paid.

The last assessment in such class was made Jan. 1st, 1853, under which to defendant's policy was assessed $52, payment of which was refused, and is the subject matter of this suit.

The Court were authorized to draw the same inferences from the facts that a jury might, and render judgment according to law.

*Bradbury*, for defendant, maintained that the assessment was illegal. It is made upon a part of the general company, when it should have been made upon the whole, thus materially increasing the defendant's liability.

At the time of defendant's insurance, the Act of 1849 had not been accepted by the company, nor has it ever been since.

But no classification was authorized, even if it had been accepted, until the property in each class amounted to $50,000. In 1850, one of the classes fell short of that sum, and there is no evidence that it has ever reached it since. The attempt to make the classification was of no avail.

The note could only be assessed according to the Act of

incorporation and by-laws of the company, which does not appear to have been done.

*North,* for plaintiffs, argued that the acceptance of the Act of 1849 may be presumed from the exercise of the corporate powers granted. *Penobscot Boom* v. *Lawson,* 16 Maine, 230, and cases there cited. A long time had elapsed since its exercise; it had been recognized at the annual meetings of the corporation; assessments had been made under it and paid by defendant, and if such questions were open to him, under the general issue, the length of time since the exercise of this power ought to put it at rest; that the acts of defendant show a ratification of the doings of the company, to which he cannot now object.

APPLETON, J. — In case of a loss the assessment must depend upon the number and amount of the policies which are to contribute. When a loss has occurred, it is a most material question to determine whether the assessment shall be made upon all or only on a portion of the policies, which may have been issued.

The right of the plaintiffs to maintain this action depends upon the validity of the assessments, which they seek to recover. If there has been no valid assessment, it is obvious that the present action is not maintainable.

By the original charter of the plaintiffs, the assessments, in case of loss were to be made upon all the policies issued. By the special Act, approved July 31, 1849, c. 250, authority is given to distribute the risks taken into three classes.

The burthen is upon the plaintiffs to show the validity of their assessments. Assuming what is denied and the determination of which is not necessary for the decision of this case, that the plaintiffs have by their acts accepted the change made in their charter by the Act of 1849, still no authority is perceived by which the present assessment can be regarded as valid.

By § 2, of the Act of 1849, it is enacted that "all applications to said company for insurance, hereafter made, may be

taken by said company under their present Act of incorporation *until* the property to be insured in each class shall amount to fifty thousand dollars; *when* the risks thus taken may be classified, and the policies issued; the applications made under this section shall contain a provision for transferring the risk from the general company to a classified risk, *when* the property to be insured in the several classes shall amount to the fund aforesaid."

It does not appear that the plaintiffs have evèr had or now have the amount of fifty thousand dollars insured in their first class. On Jan. 1, 1850, the amount of risks taken and in force, which' according to the classification made would fall under the first class, amounted to $42,000. By the second section the division into classes could not then have been legally made. It does not appear that there has ever been a time in which there was a sufficient amount insured to constitute the first class. There could be no valid assessment upon the basis of a classification, before the classification itself could legally take place. The existence of the facts, which should precede a legal distribution of risks into classes, is not shown. Until their existence is established, the corporation could not classify their risks, nor make their assessments upon the basis of a division into classes.        *Plaintiff nonsuit.*

TENNEY, J., did not sit in this case.